UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 11 B 45378 |
| ) | |
| NEKESSA DANYELLE JOHNSON, ) | Chapter 7 |
| ) | |
| Debtor. ) | Honorable Janet S. Baer |
| ) | |

## MEMORANDUM OPINION

This matter is before the Court on the motion of debtor Nekessa Danyelle Johnson (the "Debtor") to vacate the Court's order of March 27, 2012, which disallowed the Debtor's exemption in an adoption tax credit on the basis of 735 Ill. Comp. Stat. 5/12-1001(g)(1) (the "Order"). In the alternative, the Debtor requests that the Court amend the Order to provide that Chapter 7 trustee David P. Leibowitz (the "Trustee") shall not make any distributions to creditors until the United States Supreme Court determines the constitutionality of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) (the "PPACA"). For the reasons set forth below, the motion to vacate the Court's Order will be granted, and the Trustee's objection to the Debtor's exemption will be overruled.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The proceeding concerns the allowance or disallowance of an exemption from property of the estate and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is properly

placed in this Court pursuant to 28 U.S.C. § 1409(a).

## II. **FACTS AND BACKGROUND**

All of the facts in this matter are undisputed. The pertinent facts, as outlined in the parties' pleadings and the Court's docket, are as follows.

In tax year 2011, the Debtor adopted two young children with special needs, as that term is defined by the Illinois Department of Children and Family Services. (*See* Bankr. Dkt. No. 36, Debtor's Mot. to Vacate or Amend Order, Ex. B.) Subsequently, on November 8, 2011, the Debtor, acting in a *pro se* capacity, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On February 22, 2012, she filed amended Schedules B and C. To Schedule B, she added as "Other personal property of any kind not already listed" an "Adoption Credit from Tax Refund" (the "Adoption Tax Credit") in the amount of $26,760. Five days later, on February 27, 2012, the Debtor filed a second amended Schedule C on which she claimed the Adoption Tax Credit as fully exempt pursuant to the general public assistance exemption found in 735 Ill. Comp. Stat. 5/12-1001(g)(1) (West 2010) (the "Illinois Exemption Statute").

On March 19, 2012, the Trustee filed an objection to the Debtor's claimed exemption in the Adoption Tax Credit, arguing that such exemption is unauthorized by the Illinois Exemption Statute. About one week later, on March 27, 2012, the Court entered an Order disallowing the exemption and directing the Debtor to file a third amended Schedule C within fourteen days.

Thereafter, the Debtor sought the assistance of counsel. On April 9, 2012, the Debtor filed, through counsel, third amended Schedules B and C. She scheduled the pro-rated "refundable portion of anticipated adoption tax credit ($26,720) based on 2011 income" in the

amount of $23,206.14 on her Schedule B and claimed it as fully exempt on Schedule C pursuant to the Illinois Exemption Statute. The following day, the Debtor filed the instant motion to vacate or amend the Court's Order disallowing the Debtor's exemption in the Adoption Tax Credit. The motion has been fully briefed and is now ready for ruling.

### III. APPLICABLE STANDARD

The Debtor filed her motion to vacate or amend fourteen days after entry of the Court's Order. Thus, although the Debtor has cited no authority upon which the motion is based, Rule 59(e) of the Federal Rules of Civil Procedure governs this matter. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) (noting that all substantive, post-judgment motions filed within ten days (under the previous version of the rule), regardless of their caption, should be construed as Rule 59(e) motions); *see also Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.)*, 125 B.R. 963, 977 (Bankr. N.D. Ill. 1990) (*citing W. Indus., Inc. v. Newcor Can. Ltd.*, 709 F.2d 16, 17 (7th Cir. 1983)).

Rule 59(e), as adopted by Federal Rule of Bankruptcy Procedure 9023, allows a party to move the court to alter or amend a judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions serve a narrow purpose and must clearly establish a manifest error of law or fact, newly discovered evidence, *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007), or an intervening change in the controlling law. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). A court may also alter or amend a judgment under Rule 59(e) when reconsideration is necessary to prevent manifest injustice. *Vanbebber v. Wilkerson (In re Wilkerson)*, Ch. 7 Case No. 07-72213, Adv. No. 08-7025, 2010 WL 432252, at

*2 (Bankr. C.D. Ill. Feb. 1, 2010) (*citing* 11 Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* § 2810.1 (2d ed. 2009)). The decision to grant or deny a Rule 59(e) motion is within the Court's discretion. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

"The [R]ule essentially enables a . . . court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Indeed, the Rule permits a party to bring to the Court's attention any "factual and legal errors that may change the outcome so they can be corrected. It does not allow a party to introduce new evidence earlier available, or advance arguments that could and should have been presented prior to the judgment." *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 672, 673-74 (Bankr. N.D. Ill.), *aff'd*, 266 B.R. 676 (N.D. Ill. 2001), *aff'd*, 32 Fed. Appx. 158 (7th Cir. 2002).

The function of a motion to alter or amend a judgment is not to relitigate old matters or present the case under a new legal theory. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals*, 125 B.R. at 977. The rulings of a bankruptcy court "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

In the matter at bar, the Trustee contends that, because there are no facts in dispute, the

Debtor must be trying to vacate or amend the Order based on a manifest error of law committed by the Court. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation omitted). A manifest error is one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Black's Law Dictionary* 622 (9th ed. 2009).

According to the Trustee, the Debtor attempts to establish that the Court made such an error by impermissibly advancing arguments that were available to her prior to entry of the Order. This argument is unavailing. The Debtor filed her case *pro se* and continued to represent herself up to and including the hearing on March 27, 2012. Subsequently, the Debtor retained current counsel, who prepared and filed the instant motion. Thus, although the motion contains arguments that were theoretically available to the Debtor prior to entry of the Court's Order, without counsel the Debtor did not have the ability to raise those arguments in the first instance. The motion does not paraphrase, rehash, or restate arguments that the Debtor has already put before the Court; rather, it raises issues that the Debtor was not able to present while acting in a *pro se* capacity–issues that, in fact, change the outcome of the matter.

The Trustee also maintains that it is not possible that the Court committed a manifest error of law given the lack of precedent concerning the application of the Adoption Tax Credit to the general public assistance exemption found in the Illinois Exemption Statute. The fact that the application of that Credit to the exemption in the Illinois Exemption Statute is a matter of first impression in Illinois and in this circuit, however, does not preclude the Court from considering

the arguments now presented by both the Trustee and the Debtor, re-examining the issue, scrutinizing the applicable law, reviewing the holdings articulated in cases in other circuits, and otherwise reconsidering its decision on the merits. *See, e.g., In re Sterling Mining Co.*, 415 B.R. 762, 768 (Bankr. D. Idaho 2009), *aff'd*, Nos. 09-20178-TLM, CV09-465-N-EJL, 2010 WL 1816176 (D. Idaho May 5, 2000) (noting that the fact that state law might be unsettled does not require the court to "cease its duties to adjudicate disputes").

In response to the Trustee's contentions, the Debtor argues that the error of law asserted in her motion is not a "manifest error" but, rather, merely the result of misapprehension or inadvertence by the Court. She suggests that such misapprehension arose because she was not able to advance any of the arguments contained in the instant motion in support of her position while acting in a *pro se* capacity. The Court agrees. Reconsideration will allow the Court to "address oversights, and the [C]ourt appreciates the opportunity to do so." *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 553, 554-55 (Fed. Cl. 2010) (internal quotation omitted). This is particularly the case because the underlying matter before the Court is one of first impression in this jurisdiction. Accordingly, to prevent what could be a manifestly unjust result, the Court reconsiders the Order by turning to the merits of the matter.

## IV. **DISCUSSION**

The commencement of a bankruptcy case creates an estate comprised of all of a debtor's interests in property as of the petition date. 11 U.S.C. § 541(a). A debtor may claim certain property exempt from the bankruptcy estate, and that property will be excluded from the estate unless a party in interest files a timely objection. 11 U.S.C. §§ 522(b)(1), (l); *see also Taylor v.*

6

*Freeland & Kronz*, 503 U.S. 638, 642 (1992). The objecting party bears the burden to prove that an exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). Thus, in this case, the Trustee has the burden of establishing that the Debtor cannot properly claim an exemption in the Adoption Tax Credit.

Pursuant to the authority granted to it by section 522(b) of the Bankruptcy Code, 11 U.S.C. § 522(b), the State of Illinois has opted out of the federal exemption scheme. 735 Ill. Comp. Stat. 5/12-1201 (West 2010). Instead, debtors in Illinois are restricted to the exemptions provided by Illinois law. *Id.*; *In re Ray*, Ch. 7 Case No. 98 B 38634, 1999 WL 621524, at *2 (Bankr. N.D. Ill. June 23, 1999). Accordingly, the Debtor has claimed 100 percent of the pro-rated portion of her Adoption Tax Credit as exempt under the public assistance exemption in the Illinois Exemption Statute. That statute grants an exemption for the Debtor's right to receive "a social security benefit, unemployment compensation, or *public assistance benefit.*" 735 Ill. Comp. Stat. 5/12-1001(g)(1) (emphasis added). Thus, the question in this matter is whether the Adoption Tax Credit is exempt as a "public assistance benefit" pursuant to the Illinois Exemption Statute. This is an issue of first impression in Illinois.

In deciding whether the Adoption Tax Credit is a "public assistance benefit" for purposes of the Illinois Exemption Statute, the Court must examine both the statute and its interplay with section 36C of the Internal Revenue Code (the "I.R.C."), 26 U.S.C. § 36C, the statute that provided for the Adoption Tax Credit during tax year 2011, when the Debtor filed both her petition and taxes and claimed the Credit.[1] The Court's aim is to discern the legislative intent,

---

[1] Section 23, providing for the Adoption Tax Credit, was added to the I.R.C. by the Small Business Job Protection Act of 1996, Pub. L. 104-188, § 1807, 110 Stat. 1755. Section 10909 of the PPACA, Pub. L. 111-148, 124 Stat. 119, amended the I.R.C. by, among other things,

determine the objectives that the statute seeks to accomplish, and, upon ascertaining the legislature's intent, give it effect. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006); *In re Hellen*, 329 B.R. 678, 682 (Bankr. N.D. Ill. 2005). All of this should be done primarily by considering the statutory language, which is the best evidence of the statute's purposes. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

The term "public assistance benefit" as used in the Illinois Exemption Statute is not defined under Illinois law. *In re Koch*, 299 B.R. 523, 525 n.5 (Bankr. C.D. Ill. 2003); *In re Fish*, 224 B.R. 82, 83 (Bankr. S.D. Ill. 1998). Thus, absent a specific statutory definition, the Court must resolve the issue at bar by considering other significant factors, including the statute's purpose and goals. *Fish*, 224 B.R. at 84.

Illinois exemption statutes were enacted to provide debtors with assistance during trying economic times. *See In re Barker*, 768 F.2d 191, 195-96 (7th Cir. 1985) (noting that Illinois exemption statutes were created to protect debtors from becoming public charges); *In re Brockhouse*, 220 B.R. 623, 625 (Bankr. C.D. Ill. 1998) (explaining that Illinois exemption statutes aim "to protect debtors and their families by securing to them the necessary shelter and personal property required for their welfare in difficult economic circumstances"). Accordingly, the Seventh Circuit has stated that the Illinois exemption statutes should be liberally construed in

---

redesignating section 23 as section 36C, effective for tax years 2010 and 2011. *See infra*. For purposes of this Memorandum Opinion, citation references will be made to the pertinent provisions of section 36C that were in effect at the time the Debtor claimed the Adoption Tax Credit.

favor of the debtor; that is, if it is possible to interpret an exemption statute both favorably and unfavorably as to a debtor, the favorable interpretation should be chosen. *Barker*, 768 F.2d at 196; *see also Brockhouse*, 220 B.R. at 625 (*citing Barker*).

The Trustee in this case contends that the Adoption Tax Credit is a credit designed to induce socially desirable behavior–not to provide financial relief–and, thus, cannot be construed as a "public assistance benefit" under the Illinois Exemption Statute. The Debtor, on the other hand, argues that the Adoption Tax Credit both helps those in economic need *and* furthers desirable social action, that the Credit became refundable upon passage of the PPACA, and that, therefore, the Credit constitutes a "public assistance benefit" that the Debtor may claim as exempt under the Illinois Exemption Statute. "When a statute is subject to various interpretations, . . . a court should look to other sources for evidence of the legislative intent such as the statute's legislative history, the reason for the statute's enactment, the circumstances that led to its adoption, and the ends that the legislature wished to achieve." *Barker*, 768 F.2d at 195. In the context of a tax credit, in particular, courts should review the purpose and policy of the credit, as articulated by the courts or established by legislative history; the income levels at which the credit is phased down and/or eliminated; and the nature of the taxpayer's access to the credit (i.e., whether it is refundable or nonrefundable). *See, e.g., Koch,* 299 B.R. at 526-28 (using that approach to determine if the child tax credit and the additional child tax credit constitute "public assistance benefits" pursuant to the Illinois Exemption Statute). Therefore, in determining whether the Adoption Tax Credit at issue in this matter is a "public assistance benefit" under the Illinois Exemption Statute, the Court now turns to section 36C of the I.R.C.

### A. Whether the Adoption Tax Credit Is a "Public Assistance Benefit"

Studies have shown that the social benefits of adoption are many. An adopted child is less likely to grow up in poverty and more likely to get an education, and adoptive parents benefit by having a child to nurture and love. Nathaniel S. Hibben, *The Inequitable Tax Benefits of Adoption*, 4 Liberty U. L. Rev. 135, 140-41 (2009). Of the estimated half million children who were in foster care in 2010, almost 30 percent were eligible for adoption, a majority of whom were classified as having special needs. Leah Carson Kanoy, *The Effectiveness of the Internal Revenue Code's Adoption Tax Credit: Fostering the Nation's Future?*, 21 U. Fla. J.L. & Pub. Pol'y 201, 202 (2010). Adopting children from foster care, in particular, benefits not only the children and adoptive parents, but also the federal government, which can save up to $6,000 per adopted child per year. Hibben, *supra*, at 141. Despite the benefits of adoption, the costs to adopt a child can exceed $40,000, depending on the type of adoption. *Id.* at 146.

Recognizing the positive impact that adoption has on society and the often steep costs required by the adoption process, the federal government has implemented a pro-adoption policy. On August 20, 1996, President Clinton signed into law the Small Business Job Protection Act of 1996 (the "SBJPA"). Pub. L. No. 104-188, 110 Stat. 1755; *see also* Statement by President William J. Clinton upon Signing H.R. 3448, 32 Weekly Comp. Pres. Doc. 1475, 1996 U.S.C.C.A.N. 1862 (Aug. 26, 1996) ("Statement by President Clinton"). As part of the tax-relief measures included in the legislation, the SBJPA amended the I.R.C. by including, among other things, the creation of an Adoption Tax Credit, designed to encourage the adoption of special needs children, in particular, and to defray adoption costs, thereby removing economic barriers that discourage hundreds of families each year from adopting children. H.R. Rep. No. 104-542,

pt. II, at 1, 15-18, 20-21, 38 (1996).

Upon passage of the SBJPA, the Adoption Tax Credit was codified in section 23 of the I.R.C., providing a nonrefundable income tax credit for qualified adoption expenses of $6,000 per adopted child for taxpayers adopting children with special needs and $5,000 per adopted child for those adopting all other children. Small Business Job Protection Act, Pub. L. No. 104-188, § 1807, 110 Stat. 1755. Taxpayers with adjusted gross income not exceeding $75,000 were eligible to claim the Credit. *Id.* The allowable Credit was ratably reduced for taxpayers with adjusted gross income between $75,000 and $115,000 and was completely phased out for taxpayers with adjusted gross income of $115,000 or more. *Id.* As enacted, former section 23(c) allowed a taxpayer to carry forward the amount of the Adoption Tax Credit in excess of the taxpayer's tax liability to five subsequent taxable years. *Id.*

In 2001, Congress passed the Economic Growth and Tax Relief Reconciliation Act of 2001 (the "EGTRRA"), Pub. L. No. 107-16, 115 Stat. 38, in order to, among other things, "encourage more adoptions and allow more families to afford adoption." H.R. Rep. No. 107-064, at 5 (2001). The EGTRRA provided taxpayers with a nonrefundable credit for all adoptions, with a maximum credit of $10,000 per adopted child. Economic Growth and Tax Relief Reconciliation Act § 202. Further, the EGTRRA increased the phaseout income level from $75,000 to $150,000. *Id.* The provisions of the Act were scheduled to sunset after tax year 2010. *Id.* § 901.

In 2010, section 10909 of the PPACA amended section 23 of the I.R.C. to make the adoption credit refundable, redesignated section 23 as section 36C, increased the maximum allowable credit for all adoptions to $13,170 for tax year 2010 (with the maximum amount for

11

2011 indexed for inflation), and made certain other changes, all effective for tax years 2010 and 2011. PPACA, Pub. L. No. 111-148, § 10909, 124 Stat. 119, 1021-24 (2010).[2] Because the Debtor filed her petition and taxes and claimed the Adoption Tax Credit in tax year 2011, section 36C which was in effect for that tax year governs this matter. *See* 11 U.S.C. § 522(b)(3)(A); *Owen v. Owen*, 500 U.S. 305, 314 n.6 (1991) (noting that "exempt property is determined 'on the date of the filing of the petition'").

For tax year 2011, section 36C allowed a refundable tax credit for "qualified adoption expenses," defined under the statute as the "reasonable and necessary adoption fees, court costs, attorney fees, and other expenses . . . directly related to, and the principal purpose of which is for, the legal adoption of an eligible child by the taxpayer[.]" 26 U.S.C. § 36C(d)(1)(A). To be "eligible," a child had to be under the age of eighteen or "physically or mentally incapable of caring for himself." 26 U.S.C. § 36C(d)(2).

A taxpayer adopting a "child with special needs" was entitled to the full amount of the credit under the statute, regardless of actual qualified expenses. 26 U.S.C. § 36C(a)(3). For purposes of section 36C, a child was deemed to have special needs if a state agency determined that: (1) the child could not or should not be in the home of his or her biological parents, (2) "a specific factor or condition (such as . . . ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or

---

[2] The Adoption Tax Credit will revert to a nonrefundable credit with a $10,000 maximum for tax year 2012. Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 101, 124 Stat. 3296. For tax year 2013 and beyond, the Credit will be available only for special needs adoptions and may be claimed for qualified expenses incurred up to a maximum of only $6,000. U.S. Gov't Accountability Office, GAO-12-98, Adoption Tax Credit: IRS Can Reduce Audits and Refund Delays 16 (2011).

emotional handicaps)" made it "reasonable to conclude" that "adoption assistance" was needed; and (3) the child was a citizen or resident of the United States. 26 U.S.C. § 36C(d)(3).

In determining whether the Adoption Tax Credit provided by section 36C and claimed by the Debtor for tax year 2011 is exempt as a "public assistance benefit" under the Illinois Exemption Statute, the Court first considers the purpose and policy of the Credit, as expressed by the courts or established by legislative history. The Court's research reveals that there is only one reported case, *In re Walsh*, 298 B.R. 894 (Bankr. D. Colo. 2003), which discusses whether a debtor may claim an exemption in the Adoption Tax Credit. *Walsh*, however, sheds no light on the issue in the matter at bar because the Colorado statute construed in that case provides for the exemption of "[t]he full amount of any federal or state income tax refund attributed to an earned income tax credit," Colo. Rev. Stat. § 13-54-102(1)(o), while the Illinois statute exempts a "public assistance benefit." Further, as discussed more fully below, *Walsh* was decided in 2003, when the Adoption Tax Credit was, significantly, nonrefundable. In any event, the case offers no discussion of or insight into the purpose and policy of the Credit, either upon its initial enactment with the passage of the SBJPA in 1996 or as amended by the PPACA in 2010.

The Congressional Record, however, provides ample evidence of legislative intent with respect to the Adoption Tax Credit prior to its initial enactment. Congress characterized the Credit as "compassionate, pro-family, pro-children, and long overdue." 142 Cong. Rec. S9541, at S9548 (daily ed. Aug. 2, 1996) (statement of Sen. Craig). It was created to promote "strong families and a strong America" by "helping loving parents provide homes for children who [could then] be . . . raised in families." 142 Cong. Rec. S9535-01, at S9536 (daily ed. Aug. 2, 1996) (statement of Sen. Roth). According to Congress, the Adoption Tax Credit was enacted

13

with the goals of "provid[ing] incentives . . . for the adoption of children," 142 Cong. Rec. H9839-04, at H9854 (daily ed. Aug. 2, 1996) (statement of Rep. Poshard); "remov[ing] barriers to interracial adoptions," *id.* at H 9841 (statement of Rep. Pryce) (stating that the Credit "will make it possible for more children to find their way into loving, permanent homes regardless of the race of the family seeking to adopt"); and protecting abused, neglected, abandoned, orphaned, or handicapped children, as well as those with other special needs, by finding "nurturing and stable families to adopt them," 142 Cong. Rec. S9535-01, at S9539 (statement of Sen. Conrad).

Further, the legislative discussion makes it clear that, at bottom, the Adoption Tax Credit is a *financial* incentive, designed to "defray" the "high costs associated with the adoption process," thus allowing more families to adopt. 142 Cong. Rec. H9839-04, at H9841 (statement of Rep. Pryce) (noting that the costs of adoption "pose very significant obstacles"). *See also id.*, at H9857 (statement of Rep. Morella) (explaining that the credit will allow "more families to adopt" by "eas[ing] the expenses of adoption"). In particular, Congress focused on the financial challenges faced by parents adopting "hard-to-place children" with special needs by providing them with a higher tax credit than the credit given to adoptive parents of children without special needs. *Id.*; *see also* 142 Cong. Rec. S9535-01, at S9539 (statement of Sen. Conrad) ("Many stable and nurturing families may not have the resources to pay adoption expenses and other expenses such as building ramps and modifying a home to make it accessible for an adoptive child with special needs. [The Adoption Tax Credit] will help.")

Although the legislative discussion speaks in general terms about defraying the costs of adoption, there is some suggestion that the Adoption Tax Credit was especially enacted to benefit adoptive parents with moderate incomes. *See* Statement by President Clinton, *supra*, 1996

U.S.C.C.A.N. at 1862 (explaining that the Adoption Tax Credit "will help thousands of middle class parents realize their dream of adopting a child"); 142 Cong. Rec. H9839-04, at H9841 (statement of Rep. Pryce) (noting that Pryce "worked hard to find ways to make it easier for parents to adopt, especially young parents with moderate incomes"). This suggestion is bolstered by the relatively high threshold at which the Adoption Tax Credit begins to phase out.

In contrast to all of the testimony about the purpose and policy of the Adoption Tax Credit before its initial enactment in 1996, there is, enigmatically, a dearth of discourse or discussion surrounding the amendments made to the Credit by the PPACA in 2010. Those amendments radically changed the nature of the taxpayer's access to the Credit in tax years 2010 and 2011, moving it from section 23, a subpart relating to nonrefundable credits, to section 36C, a subpart relating to refundable credits.

The refundable nature of the Adoption Tax Credit for tax year 2011 is the key factor in this case. *See Koch*, 299 B.R. at 527. A refundable tax credit, like a payment, can be refunded to the taxpayer by the Internal Revenue Service. *See, e.g.,* Lily Batchelder, Fred Goldberg & Peter Orszag, *Efficiency and Tax Incentives: The Case for Refundable Tax Credits*, 59 Stan. L. Rev. 23, 33 (2006) (defining a refundable credit as one "paid in cash when a tax unit has no federal income tax liability to offset"). In contrast, a nonrefundable tax credit is a credit that can reduce income tax liability to zero, but any remaining credits are not refunded to the taxpayer. *See, e.g., Walsh*, 298 B.R. at 896 n.2 (noting that the "only function of a non-refundable credit . . . is to reduce the taxpayer's tax liability"). Because tax liability is a product of income, the Adoption Tax Credit, as originally enacted, strongly favored higher-income taxpayers over middle- and lower-income taxpayers. *See, e.g.,* Kanoy, *supra*, at 216 (noting that nononrefundable tax

credits, such as the Adoption Tax Credit as enacted, "typically offer the greatest benefit to taxpayers in the highest marginal tax bracket allowed under the credit, because these individuals have the requisite tax liability to claim the credit . . . and are also more likely to seek the aid of tax preparers to ensure that all available tax benefits are utilized"); Hibben, *supra*, at 146-152 (providing a thorough analysis of how the Adoption Tax Credit, as enacted, favors higher-income taxpayers).

Despite the lack of evidence of legislative intent with respect to the enactment of the amendments made by the PPACA to the Adoption Tax Credit in 2010, by making the Credit refundable for tax years 2010 and 2011, Congress clearly enabled lower-income adoptive families, previously unable to use the Credit, to receive, for the first time, a cash refund from the government for their adoption expenses.

The *Koch* court noted that if a tax credit is nonrefundable, it cannot be claimed as exempt, and further inquiry need not be made. *Koch*, 299 B.R. at 527. If, however, a tax credit is refundable to taxpayers of more limited financial means, as the Adoption Tax Credit was in tax year 2011, it may be claimed exempt as a "public assistance benefit." *See id.* at 528.

Based on the foregoing, and mindful of the Seventh Circuit's instruction that an exemption statute should be liberally construed in favor of the debtor, the Court finds that the Trustee has not met his burden of establishing that the exemption claimed by the Debtor is improper. Accordingly, the Court holds that the Adoption Tax Credit provided by section 36C of the I.R.C. and claimed by the Debtor for tax year 2011 is exempt as a "public assistance benefit" under the Illinois Exemption Statute. The Debtor's motion to vacate the Court's Order is granted, and the Trustee's objection to the Debtor's exemption is overruled.

## B. The Constitutionality of the PPACA

In her motion, the Debtor alternatively requests that the Court amend its Order to provide that the Trustee shall not make distributions to creditors until the United States Supreme Court determines the constitutionality of the PPACA. Because the Debtor's motion to vacate is granted and the Trustee's objection overruled, this alternate request is moot. However, the constitutionality of the PPACA is certainly relevant to the Court's decision, and, thus, will be briefly discussed.

The United States Supreme Court considered the constitutionality of the PPACA on June 28, 2012 in *National Federation of Independent Business v. Sebelius,* 132 S. Ct. 2566 (2012). The two provisions of the PPACA at issue in *National Federation* are not pertinent to the question in the matter at bar. Thus, the Court need not substantively discuss those provisions. The Court notes merely that the United States Supreme Court ultimately held that one of the PPACA provisions violates the U.S. Constitution, and the other one at issue does not. *Id.* at 2601-06. Despite its conclusion that one of the PPACA's provisions violates the U.S. Constitution, the Supreme Court noted that the other provisions of the PPACA are not affected and that the entire Act need not be struck down. *Id.* at 2608. The Court explained that "Congress would have wanted to preserve the rest of the Act." *Id.*; *see also id.* at 2638-42 ("[W]hen a court confronts an unconstitutional statute, its endeavor must be to conserve, not destroy, the legislature's dominant objective.").

For purposes of the matter at bar, because the PPACA remains constitutional, the amendments that the PPACA made to the Adoption Tax Credit provisions remain intact as well. Accordingly, the Adoption Tax Credit was refundable for tax year 2011 when the Debtor filed

her petition and taxes and claimed the Credit, and the Court's reasoning and decision stand.

## V. CONCLUSION

For the foregoing reasons, the Debtor's motion to vacate the Court's Order, which disallowed her exemption in the Adoption Tax Credit on the basis of the public assistance exemption in the Illinois Exemption Statute, is granted, and the Trustee's objection to the exemption is overruled.

Dated: 10/11/12

ENTERED:

_____
JANET S. BAER
United States Bankruptcy Judge